James W. **BUCHANAN**, Appellant–
Defendant,

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 18A04–0004–CR–167.

Court of Appeals of Indiana.

Feb. 19, 2001.

Geoffrey A. Rivers, Muncie, IN, Attorney for Appellant.

Karen M. Freeman–Wilson, Attorney General of Indiana, Adam Dulik, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

MATTINGLY, Judge

James Buchanan appeals his conviction after a jury trial of child molesting, a Class A felony. Buchanan alleges five errors, which we restate as: 1) that the trial court

abused its discretion when it allowed into evidence certain pornographic photographs, drawings, and magazines found in Buchanan's possession; 2) that six-year-old H.B., the victim, was incompetent to testify; 3) that another witness improperly vouched for the victim's testimony; 4) that Buchanan's confession was obtained illegally; and 5) that the evidence was insufficient to sustain his conviction.[1]

We find the trial court erred in admitting certain evidence, and so reverse and remand for a new trial.

## FACTS [2] AND PROCEDURAL HISTORY

◼ Fifty-eight-year-old Buchanan was babysitting H.B., then five years old, on July 24, 1999. After Buchanan and H.B. went swimming in their clothes on Buchanan's riverfront property, Buchanan told H.B. to take off her clothes. After H.B. complied, Buchanan told her to lie on the ground. Buchanan then photographed her and performed oral sex on her. H.B. was returned to her parents without her original clothing and covered with insect bites. Within a few days, H.B. spontaneously informed her mother of the incident. Medical and law enforcement authorities were notified, and Buchanan was arrested and ultimately convicted.

## DISCUSSION AND DECISION

1. *Improper Admission of Character Evidence*

During the execution of a search warrant at Buchanan's home, police found a large quantity of pornographic material depicting children, which material included videotapes, drawings, postcards, and magazines. Some of these were admitted into evidence at Buchanan's trial over his objection. Buchanan claims that the admission of this evidence was error because its potential prejudicial effect on the jury outweighed any probative value and because the State improperly used the evidence to prove Buchanan's character. We agree with Buchanan and so must reverse and remand for a new trial.

◼ Indiana Evidence Rule 404(b) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Such evidence may be admissible for other purposes "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake." *Id.* "That is, such evidence may be admissible *despite its tendency to show bad character or criminal propensity,* if it makes the existence of an element of the crime charged more probable than it would be without such evidence." *Lannan v. State,* 600 N.E.2d 1334, 1339 (Ind.1992), quoting *Bedgood v. State,* 477 N.E.2d 869, 872–73 (Ind.1985).[3] Even if such evidence is relevant, however, it may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. Evid. R. 403.

◼ In deciding whether evidence is admissible under Rule 404(b), the trial court must determine that the evidence of other crimes, wrongs, or acts is relevant to a matter at issue other than the defendant's propensity to commit the charged act, and

---

1. Because we reverse and remand for a new trial, we do not address Buchanan's contention that he was improperly sentenced.

2. We remind Buchanan's counsel that a Statement of Facts in an appellate brief should be a concise narrative of the facts stated in a light most favorable to the judgment, and should not be argumentative. *Nehi Beverage Co., Inc. v. Petri,* 537 N.E.2d 78, 82 (Ind.Ct.App.1989). The Statement of Facts Buchanan's counsel offers us is, by contrast, a transparent attempt to discredit the judgment, and it is clearly not intended to be a vehicle for informing this court.

3. In *Lannan* our supreme court abandoned the "depraved sexual instinct" exception to the admission of prior act evidence. That exception had allowed the admission of such evidence to show action in conformity with a particular character trait.

must then balance the probative value of the evidence against the danger of unfair prejudice pursuant to Evid. R. 403. *Roop v. State*, 730 N.E.2d 1267, 1270 (Ind.2000). The State argues the admission of the evidence secured at Buchanan's home with a valid search warrant was properly admissible to show Buchanan's plan and motive to molest H.B. It was not.

### A. *Evidence of Plan or Motive*

Buchanan argues that evidence in the form of photographs of semi-nude children, drawings of nude children and the cover of a magazine entitled "Little Girls," which appears to depict an adult male engaging in intercourse with a child, was irrelevant and highly prejudicial. He argues that this evidence was "not even illegal in substance," (Br. of Appellant at 11), and contends the admitted evidence tends only to prove he behaved in conformity with his "bad character." The State contends these materials were properly admitted as evidence of Buchanan's plan and motive to molest H.B.

In order to fit within the plan exclusion, the test

> is not whether the other offenses have certain elements in common with the charged crime, but whether the other offenses tend to establish a preconceived plan by which the charged crime was committed. The crimes must, therefore, be so related in character, time, and place of commission as to establish some plan which embraced both the prior and subsequent criminal activity and the charged crime.

*Lannan*, 600 N.E.2d at 1339 (discussing evidence of prior crimes).

The drawings and photographs the State offered and the trial court admitted into evidence depicted naked and semi-clothed little girls. None of the drawings or pho-

tographs showed physical contact between an adult male and a female child. Buchanan was accused of licking H.B.'s genital area and was charged with child molestation. As distasteful as we find these drawings and photographs, they do not show that Buchanan had a common plan to sexually molest little girls.[4] Because the drawings and photographs were not relevant to the existence of a "plan" on Buchanan's part, their admission into evidence was error.

Similarly, the drawings and photographs were not relevant evidence of Buchanan's motive. The relevance of character evidence to show motive is tied to the facts of the specific crime. *Hicks v. State*, 690 N.E.2d 215, 224 n. 12 (Ind.1997). For example, a defendant's prior bad acts may be admissible to show the relationship between the defendant and the victim. *Id.* at 222. *See also Elliott v. State*, 630 N.E.2d 202, 204 (Ind.1994) (prior threats of violence to ex-wife and victim admissible to show the relationship between the parties and defendant's motive); *Price v. State*, 619 N.E.2d 582, 584 (Ind.1993) (prior bad acts against the victim are admissible "to show the relationship between the parties and appellant's motive"). Here, the drawings and photographs of naked little girls are not tied to Buchanan's relationship with the victim or to any other facts of Buchanan's crime. As a result, they should not have been admitted to prove Buchanan's motive.

### B. *Unfair Prejudice*

Even if these photographs and drawings evidence a common plan or motive, they do not pass the second part of the test—the balancing of the probative value of the evidence with its prejudicial effect that is required under Evid. R. 404(b). We find extremely prejudicial the sheer volume of

---

4. The cover of the magazine entitled "Little Girls" suggests, but does not show, an adult male engaging in intercourse with a child. Although we find the magazine extremely disturbing, its depiction of sexual activity be- tween an adult and a child does not provide the relevant evidence of a "plan" on Buchanan's part that is required under our supreme court's explanation in *Lannan*.

the drawings and photographs of this nature; in Exhibit # 6, there were 77 particularly offensive drawings and photographs. As a result, we cannot say that the minimal probative value, if any, of these drawings and photographs outweighed their prejudicial effect.[5]

### 2. Competency of H.B.

Because we remand, we address certain other of the issues Buchanan raises, in order to avoid questions on retrial.

 Buchanan alleges the trial court erred in allowing the then six-year-old H.B. to testify, as her testimony was contradictory as to whether she knew the difference between the truth and a lie. The competency of a challenged witness is to be decided by the trial court as a matter of law. *Kimble v. State*, 262 Ind. 522, 525, 319 N.E.2d 140, 143 (1974). When the trial court has found a witness to be competent, the reviewing court will interfere only if there is a manifest abuse of discretion. *Morris v. State*, 172 Ind.App. 509, 513, 360 N.E.2d 1027, 1029 (1977).

In *Newsome v. State*, 686 N.E.2d 868 (Ind.Ct.App.1997), a challenge to a seven-year-old child molestation victim's testimony, we reviewed this court's established test to determine witness competency in light of Evid. R. 601. That Rule provides: "Every person is competent to be a witness except as otherwise provided in these rules or by act of the Indiana General Assembly." In *Newsome*, we noted that before a child will be deemed competent, it must be established that the child (1) understands the difference between telling a lie and telling the truth, (2) knows she is under a compulsion to tell the truth, and (3) knows what a true statement actually is. 686 N.E.2d at 873.

A hearing was held to evaluate H.B.'s competency to testify at trial. According to the record, H.B. was able to distinguish between telling the truth and telling a lie because she had experienced punishment for lying and had experienced no repercussions for reciting the truth. She identified examples of true statements and lies, and accurately distinguished examples of what was a lie and what was the truth. She also acknowledged the importance of telling the truth in the courtroom by identifying her testimony as a "promise to tell the truth" and comparing the importance of her answers to questions in court with telling the truth to a teacher in a school setting. H.B.'s statements at the hearing indicate she was competent to testify and the trial court did not abuse its discretion in allowing her testimony.

### 3. Improper Vouching

 Buchanan also argues H.B.'s regular therapist, who testified as to H.B.'s capacity and ability to observe and recall events accurately and to distinguish fact from fantasy, improperly "vouched" for her testimony. We disagree. Generally, neither an expert nor a lay witness may testify that another witness is telling the truth. The admission of such testimony

---

**5.** Buchanan asserts, without explanation or citation to authority, that a videotape of his statement to the police was improperly admitted. In the videotape Buchanan describes himself as a "pedophile" and draws a distinction between being a "pedophile" and a "child molester." He states he understood the word "pedophile" to mean one who "likes stories, pictures, drawings, postcards, and tapes of children." (Br. of Appellant at 11.) Because Buchanan offers no cogent argument why this statement should not have been admitted, we are unable to address this allegation of error.

Although we are unable to address on appeal the admissibility of Buchanan's statement that he was a pedophile, we question the admissibility of the videotape. Much of the videotape reflects questions by the police directed to the proposition that because Buchanan had photographs and drawings of naked little girls, it was difficult for the police to believe he hadn't molested H.B. The repetition of like questions and comments by the police underscores the likelihood that the jury might rely on some of the evidence in the videotape to find that Buchanan had molested H.B. simply because he had these materials in his possession.

invades the province of the jury. *Jones v. State,* 581 N.E.2d 1256, 1258 (Ind.Ct.App. 1991). There, we determined that a therapists' testimony that "I believe the child was molested" was impermissible.

Here, by contrast, at no point did H.B.'s therapist "vouch" for the substance of H.B.'s testimony or testify whether, in his opinion, she was molested. Rather, the therapist testified only to the effect that he believed H.B. could accurately process information and could distinguish between fact and fantasy. H.B.'s therapist did not improperly "vouch" for her testimony.

#### 4. *Voluntary Confession*

■ After Buchanan was in custody but before his arraignment, Special Agent Neal Freeman of the FBI interviewed Buchanan after written and verbal *Miranda* warnings were executed. Agent Freeman testified that Buchanan spoke freely with him and another agent about a videotape found during the search of Buchanan's residence. The tape depicted an adult male (not Buchanan) having sexual intercourse with a child. Upon winding up the interview, one of the agents told Buchanan the agents would be contacting H.B.'s family and asked if Buchanan had any message for them. At this point, Buchanan lowered his head, began to cry, offered an apology, and confessed that he had licked H.B.'s genitals. The FBI agent reduced the statement to writing, but Buchanan refused to sign it.

■ Buchanan now complains that this confession to the charged crime in the presence of FBI agents was involuntary and should have been suppressed because he refused to sign the statement. The decision whether to admit a defendant's custodial statement is within the discretion of the trial court. *Horan v. State,* 682 N.E.2d 502, 509 (Ind.1997); *Jones v. State,* 655 N.E.2d 49, 56 (Ind.1995). In making a determination whether a statement is voluntary, the trial court must consider the totality of the circumstances. *Fields v. State,* 679 N.E.2d 1315, 1320 (Ind.1997).

The court attempts to insure that a confession was not obtained "through inducement, violence, threats or other improper influences so as to overcome the free will of the accused." *Id.* (quoting *Collins v. State,* 509 N.E.2d 827, 830 (Ind.1987)). When reviewing a challenge to the trial court's decision, we do not reweigh the evidence but instead examine the record for substantial, probative evidence of voluntariness. *Jones,* 655 N.E.2d at 56.

Buchanan claims his confession was false and was an attempt to distract the federal agents from his long-time friend who was shown molesting a child in the videotape. At the pre-trial suppression hearing to evaluate the circumstances of his confession, Buchanan characterized his statement as "given freely and voluntarily." (R. at 282.) The trial court found Buchanan's will had not been overcome by the agents; his *Miranda* waiver was voluntarily given; and under the totality of the circumstances the statement itself was voluntarily given. (R. at 289.) Because the record reveals no inducement, violence, threats or other improper influences so as to overcome Buchanan's free will, we find Buchanan's confession was properly admitted by the trial court.

#### 5. *Insufficient Evidence*

■ Buchanan contends the evidence presented at trial was insufficient to support his conviction. He notes there were only two eyewitnesses to the crime and asserts he was "tricked" into confessing to the crime charged, which confession he repudiated.

■ Our standard for reviewing a claim of insufficiency of the evidence is well settled. We do not reweigh the evidence or judge the credibility of witnesses. *Spurlock v. State,* 675 N.E.2d 312, 314 (Ind.1996). We look to the evidence and the reasonable inferences therefrom that support the verdict, and we will affirm a conviction if evidence of probative value exists from which a jury could find the

defendant guilty beyond a reasonable doubt. *Id.*

At trial, H.B. testified that Buchanan touched her with his tongue "where I pee." (R. at 345.) She recounted the course of events that led them to the river, the circumstances of her disrobing, and Buchanan's videotape of her. The uncorroborated testimony of one witness is sufficient to sustain a conviction on appeal. *Toney v. State*, 715 N.E.2d 367, 368 (Ind. 1999). H.B.'s testimony and Buchanan's confession provided sufficient evidence to support the conviction. Since we find that there was sufficient evidence to support Buchanan's conviction, double jeopardy is not implicated, and Buchanan may be retried.

## CONCLUSION

We find that H.B. was competent to testify, her therapist did not improperly vouch for her testimony, Buchanan's confession was voluntary, and there was ample evidence to support Buchanan's conviction. However, the prejudicial effect of much of the evidence offered by the State and admitted at trial so far outweighed its probative value that we must reverse. We so order, and remand to the trial court for further proceedings consistent with this opinion.

ROBB, J., and MATHIAS, J., concur.